# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | |
|---|---|---|
| CONTRACT SERVICES GROUP, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:22-CV-66-JPK |
| | ) | |
| E&E MANUFACTURING OF TENNESSEE, | ) | |
| LLC, and ADIENT US, LLC, | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

This matter is before the Court on a motion to dismiss filed by Defendant E&E Manufacturing of Tennessee, LLC ("E&E") [DE 17]. The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. [DE 20]. Therefore, pursuant to 28 U.S.C. § 636(c), this Court has jurisdiction to decide E&E's motion. For the reasons discussed below, the motion is denied.

## BACKGROUND[1]

Plaintiff Contract Services Group, LLC ("CSG") provides quality control inspections, containment, and re-work services for manufacturers in the auto industry. [DE 1 ¶ 1]. Non-party Lear Corporation ("Lear") operates a facility in Hammond, Indiana where it produces seating components as a Tier 1 supplier to Ford Motor Company. [*Id* ¶¶ 1, 14]. Defendant Adient US, LLC ("Adient") is a Tier 2 supplier, which provided Lear with certain parts for the seats being

---

[1] The Court draws the facts in this section from the Complaint and its attachments [DE 1]. The Court is not assuming the truth of the matters asserted but merely setting forth what is alleged.

produced at Lear's Hammond facility. [*Id.* ¶¶ 10, 15]. Defendant E&E is a Tier 3 supplier, which provided component parts to the particular product that Adient was providing to Lear. [*Id.* ¶¶ 11, 16].

In September 2019, Lear notified Adient of a "failure condition at Ford" regarding a part that had been supplied by Adient for Lear's seats ("Missing Pivot Bolt on Adjuster"). Lear informed Adient that it had "issued a shock containment to protect [its] production process against any additional suspect material on-hand or in the pipeline from [Adient's] facility." [*Id.* at 18-19]. Specifically, Lear stated that "[c]ontainment has been added … to protect [Lear's] production line and [its] customer [Ford]," including "validating that both Pivot bolts are present and not loose on each adjuster." [*Id.* at 19]. Lear requested, among other things, that Adient "confirm [Lear's] authorization to CSG to begin sorting for this concern and issue the necessary PO to cover the cost[.]" [*Id.*].

CSG alleges that "[i]t was determined that the defective components were supplied by Defendant E&E." [*Id.* ¶ 19; *see also id.* at 17 (email from Lear to Adient stating that Lear was "dealing with non-conforming material coming out of [Adient's] facility," and that "one of the concerns may be the result of out of spec. conditions from [Adient's] Tier 3 supplier")]. CSG alleges that "E&E agreed to take financial responsibility for the containment and inspection of parts by way of a formal Work Requisition that E&E executed and provided to [CSG] on or about November 5, 2019." [*Id.* ¶ 20; *see id.* at 12-13 (Exhibit A—Work Requisition)]. CSG alleges that, "[a]t one point, E&E disputed with Adient whether additional containment and inspection was necessary," and "Adient communicated to E&E that the containment and inspection was necessary to avoid line shutdowns." [*Id.* ¶¶ 22, 23]. Specifically, "[d]ue to the extremely high rate of rejected parts being found during the inspection, which if not used in production would have shut down

assembly and production lines, Ford permitted the rejected parts to be used in assembly under an 'Alert,' yet still required containment and inspection to stay in place." [*Id.* ¶ 21]. Email correspondence attached to the Complaint indicates that, on November 9, 2019, Lear explained to Adient that Lear had "an out of spec. hole condition impacting [its] build process and now a missing pivot bolt concern found by Ford," and that Lear "need[ed] all of Adient's support regarding both issues." [*Id.* at 17]. Lear noted that the issues with Adient's parts were "causing significant impact to [Lear's] build process," and that Lear had been forced to "sort and supply good parts for production use … due to the high fallout," which "still continues." [*Id.*]. Lear warned Adient that if it had "to trigger a PO to protect [its] production process, there w[ould] be a substantial premium added to the cost and a customer satisfaction QN issued to Adient for failure to respond and protect Lear and Ford[,] and [it] will have to be escalated to Lear Corporate and possibly Ford for their input." [*Id.*]. Lear stated that it "need[ed] … someone from Adient's management team to reply to both of [the] emails … sent today, confirming the authorization to CSG to sort as [the] emails state[d]." [*Id.*]. Adient responded on November 10, 2019: "Regarding sort and containment, we will cover all expen[s]es and inspection regarding bad Quality from our process or from our supplier process." [*Id.*]. After receiving this assurance, Lear sent a confirmation email, copying CSG on the email, which stated: "I am including the CSG Management team in this email thread … so they feel comfortable executing the current containment directives for 3rd party support given by Lear Quality to protect [Lear's] build process regarding both the Out Of Spec. hole Condition and the Missing Pivot Bolt[,] based on [Adient's] confirmation [email] below. Please make sure the PO is issued to them on Monday." [*Id.* at 16].

CSG alleges that it "performed its containment activities at Lear's facility at the direction of both Adient and E&E." [*Id.* ¶ 2]. Further, it alleges that it continued its work until closure of the

containment after about November 26, 2019 based on "Adient's promise to cover the expenses, in addition to the written contract in force between E&E and [CSG]." [*Id.* ¶ 25]. In addition, CSG alleges that "[a]t all times during containment, [CSG's] representatives participated in conference calls hosted by Lear, which were also attended by management representatives from Ford, Lear, Adient, and E&E," and that "[e]ach of these parties understood that [CGS] was continuing its containment and inspection work for the benefit of [Adient and E&E]." [*Id.* ¶ 26].

CSG alleges that it sent invoices to Adient totaling about $14,466.51, which were due in October and November 2019, as well as invoices to E&E totaling $125,812.90, which were due in December 2019. [*Id.* ¶¶ 27, 28]. Both Adient and E&E, however, refused to pay any amount to CSG, each arguing that the other should pay the invoices. [*Id.* ¶¶ 30-31]. CSG alleges that the total amount owed to it is about $140,279.41, not including interest. [*Id.* ¶ 29]. After two years of trying to obtain payment from Adient and E&E, CSG brought this lawsuit to collect the amount owed to it. [*Id.* ¶ 30]. CSG seeks judgment against both Adient and E&E under alternative theories of breach of contract (Count I (E&E); Count II (Adient)), promissory estoppel (Count III (Adient only)), and unjust enrichment (Count IV (Adient and E&E)). Jurisdiction over CSG's suit is premised on diversity of citizenship. *See* [*id.* ¶ 12; DE 5, 6].

## DISCUSSION

E&E seeks dismissal of CSG's claims against it based on a forum–selection clause in the Work Requisition attached to the Complaint as Exhibit B. The Work Requisition was issued by CSG and names E&E as the "Client." It provides contact information, rates, and "Terms and Conditions," including those set out in "Appendix 1." [DE 1 at 12]. Among other things, Appendix 1 states as follows:

4

> **Choice of Law:** This agreement shall be interpreted under the laws
> of the State of Indiana. Any litigation under this agreement shall be
> resolved in the trial courts of Lake County, Indiana.

[*Id.* at 13]. According to E&E, the quoted language is unambiguous and requires that CSG's claim

for breach of the Work Requisition be filed in Indiana state, not federal, court, and that CSG's

related claim against it to recover under a theory of unjust enrichment also must be litigated in that

venue.

The Court begins by pointing out that most of the legal arguments briefed by E&E are not

in dispute. For instance, CSG does not dispute E&E's contention that the forum–selection clause

is mandatory.[2] Nor does CSG argue about whether the clause requires suit to be filed in state as

opposed to federal court in Lake County, Indiana.[3] Finally, CSG does not disagree that if the

---

[2] It appears fairly well established that the use of the word "shall" generally is interpreted to be mandatory. *See IAC/InterActiveCorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022) ("The central inquiry … is whether a clause is merely a party's consent to a court's jurisdiction—constituting a permissive forum selection clause—or whether the clause has mandatory language specifying that disputes under the contract 'shall' or 'will' be litigated in a specific venue or forum."); *see also Jailani v. QFS Transp. LLC*, No. 4:20-cv-55-TWP-DML, 2020 WL 2847019, at *4 (S.D. Ind. June 2, 2020); *High Tech Nat'l, LLC v. Wiener*, No. 1:19-cv-2489-SEB-MJD, 2019 WL 6329654, at *7 (S.D. Ind. Nov. 26, 2019).

[3] There is conflicting authority on this point. *Compare Living Vehicle, Inc. v. Aluminum Trailer Co.*, No. 3:21-cv-149-DRL-MGG, 2021 WL 2721261, at *1-2 (N.D. Ind. July 1, 2021) (where the contract language provided that "the complaining party shall file suit with the county of the opposing company," court holds that "the clause here fails to lock down venue to a state court alone"); *Rochester Cmty. Sch. Corp. v. Honeywell, Inc.*, No. 3:06-cv-351-RM, 2007 WL 2473464, at *2, *6 & n.2 (N.D. Ind. Aug. 27, 2007) (finding contract language that referred to "a court of competent jurisdiction of Fulton County, Indiana" to be ambiguous as to whether it was intended to include only state court and therefore holding that it would be construed against the drafter and in favor of a defendant's right to remove to federal court; citing district court cases where reference to a state county had been construed to include a federal court in that county, as well as cases reaching opposite result); *Bodine Elec. Co. v. Viking Access Sys., LLC*, No. 09 C 3055, 2009 WL 3055362, at *2 (N.D. Ill. Sept. 22, 2009) (holding in the context of a remand motion that venue in federal court was appropriate because the words "located in" implies a specific place, not a specific forum, and thus did not unambiguously preclude federal court (collecting cases)); *Accurate Controls, Inc. v. Cerro Gordo Cnty. Bd. of Supervisors*, 627 F. Supp. 2d 976, 987-88 (N.D. Iowa 2009) ("a federal court in a district that encompasses the county in which a state venue statute

5

forum-selection clause is valid and enforceable, it would apply to CSG's equitable claim for unjust

enrichment, not just its breach of contract claim against E&E.[4]

---

would lay venue is a court in that county, and venue in the federal court is thus proper" (citing *inter alia Erwin v. Barrow*, 217 F.2d 522, 525 (10th Cir. 1954))), *with Vasquez v. Hunter Bloomington Props, LLC*, No. 1:21-cv-1012-JMS-TAB, 2021 WL 3033312, at *3 (S.D. Ind. July 19, 2021) ("The Southern District of Indiana is not a court of Monroe County, Indiana. The only court located in Monroe County, Indiana is the Monroe Circuit Court, a state court."); *Mizauctions, LLC v. Cross*, No. 5:17-cv-2935, 2017 WL 3602079, at *3 (E.D. Pa. Aug. 22, 2017) (noting that federal courts interpreting forum selection clauses naming a specific county have generally held that the selected venue includes a federal court only if there is a federal courthouse in that county); *Cnty. Materials Corp. v. Ind. Precast, Inc.,* No. 1:16-cv-1456-TWP-MJD, 2017 WL 347474, at *2, 3 (S.D. Ind. Jan. 23, 2017) (holding that contractual clause referring to "a court in Hancock, County, Indiana" does not include federal court sitting in Marion County); *with Complete Women's Imaging, P.C. v. Merge Healthcare, Inc.,* No. 14-C-1029, 2014 WL 7409517, at *1 (E.D. Wis. Dec. 31, 2014) (holding that the phrase "courts of Milwaukee County" was not ambiguous because "[t]he Milwaukee Division of the Eastern District of Wisconsin is located *in* Milwaukee County, but it is not a court *of* Milwaukee County" (emphasis in original), and also because "for federal court purposes, venue is not stated in terms of 'counties,'" but "[r]ather … in terms of 'judicial districts'" (citation omitted)); *Gator Wash, LLC v. Lighthouse Carwash Sys., Inc.,* No. 1:07-cv-1494-LJM-TAB, 2008 WL 506070, at *1 (S.D. Ind. Feb. 20, 2008) (agreeing with the analysis of the Tenth Circuit in *Excell v. Sterling Boiler & Mechanical, Inc.* 106 F.3d 318, 321 (10 Cir. 1997), that, "[b]ecause the language of the clause refers only to a specific county and not to a specific judicial district, … venue is intended to lie only in a state district [county] court"); *Progressive Publ'ns., Inc. v. Cap. Color Mail, Inc.*, 500 F. Supp. 2d 1004, 1006 (N.D. Ill. 2007) (same). Since CSG does not make any argument to the contrary, the Court assumes that it concedes the issue and will not address it further.

[4] E&E cites *American Patriot Insurance Agency, Inc. v. Mutual Risk Management*, *Ltd.*, 364 F.3d 884 (7th Cir. 2004), on this issue, where the court held that the contractual language encompassed the plaintiff's fraud claims as well as its breach of contract claim because the clause referred to "disputes *concerning* the contractual relationship between the parties, however those disputes are characterized," further observing that "the existence of multiple remedies for wrongs arising out of a contractual relationship does not obliterate the contractual setting." *Id.* at 889 (emphasis added). E&E also cites *Michael Lewis Co. v. International Consolidated Airlines Group, S.A.*, No. 1:21-cv-1751, 2022 WL 846841, at *3 (N.D. Ill. Mar. 22, 2022), where the court held that the language of a forum-selection clause in a contract with the defendant's parent company referring to "matters arising out of or in connection with this Agreement" encompassed the plaintiff's claims against the non-signatory subsidiary company, even if the plaintiff's claims against that company were based on an oral contract and a course of dealing rather than the contract with the parent company which contained the forum-selection clause. *See id.* at *4. In so holding, the court observed that the plaintiff could not "circumvent the forum-selection clause by attempting to assert a new theory of recovery (quantum meruit) or a new contract, and certainly not one 'inextricably

6

The only argument CSG makes against application of the forum-selection clause in this case is that, because CSG also has filed suit against Adient, which is not a party to the Work Requisition, Indiana courts would not enforce the forum-selection clause based on judicial efficiency concerns of avoiding multiple suits over the same issues. The Court addresses E&E's motion and CSG's response in three parts. First, the Court must resolve the parties' disagreement over the appropriate legal framework for evaluating a contractual forum-selection clause. Second, after identifying the correct legal framework the Court must address a question only touched upon in the briefing—whether the Work Requisition constitutes an enforceable contract between CSG and E&E. Third, having considered these two preliminary issues, the Court lastly will discuss whether CSG may avoid the forum-selection clause based on its judicial efficiency policy argument.

### A.   LEGAL FRAMEWORK FOR EVALUATING A MOTION TO ENFORCE A CONTRACTUAL FORUM–SELECTION CLAUSE

E&E styles its motion as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). CSG, on the other hand, argues that Federal Rule of Civil Procedure 12(b)(3) applies to E&E's motion to dismiss. A third option not directly addressed by either party is a stand-alone motion to dismiss pursuant to the common law doctrine of *forum non conveniens*, as articulated

---

intertwined' with the [agreement between the plaintiff and the parent company]." *Id.* (citation omitted). CSG does not argue that the contract language in this case—"litigation *under* this agreement"—should be interpreted more narrowly than the somewhat broader language in these cases. *Compare Am. Patriot,* 364 F.3d at 889 (stating that the plaintiff's argument that the contract language "concerning" was "narrower than the more common term 'arising out of'" was "semantic quibbling"). In any event, CSG's breach of contract claim is clearly a claim "under" the Work Requisition, and CSG does not argue that, even if the forum-selection clause were to be held to apply to its breach of contract claim, its additional claim against E&E for unjust enrichment should be excluded from its reach. Accordingly, the Court need not address E&E's arguments on these points further.

by the United States Supreme Court in *Atlantic Marine Construction Co. v. United States District Court for the Western District of Texas*, 571 U.S. 49 (2013).[5] The Court will address each of these options in turn.

### 1.   RULE 12(b)(3)

The Court begins with CSG's argument that Rule 12(b)(3) applies to E&E's motion. Rule 12(b)(3) states that a party may file a motion asserting improper venue as a defense to a claim for relief. Prior to the Supreme Court's decision in *Atlantic Marine*, the rule in this circuit was that a motion to dismiss based on a contractual forum–selection clause must be brought pursuant to Rule 12(b)(3), not Rule 12(b)(6). *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.,* 417 F.3d 727, 733 (7th Cir. 2005); *Cont'l Ins. Co. v. M/V ORSULA*, 354 F.3d 603, 606-07 (7th Cir. 2003); *Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995). The Seventh Circuit's rationale for applying Rule 12(b)(3) over Rule 12(b)(6) had to do with timing.[6] Applying Rule 12(b)(3), "[t]he district court [is] not obligated to limit its consideration to the pleadings nor to convert the motion to one for summary judgment." *Cont'l Cas. Co.*, 417 F.3d at 733. As the Seventh Circuit has explained, "Rule 12(b)(3) is a somewhat unique context of dismissal in that a court may look beyond the mere allegations of a complaint, and need not view the allegations of the complaint as the exclusive basis for its

---

[5] Both parties appear to recognize that E&E's motion to dismiss is brought pursuant to the doctrine of *forum non conveniens*, but then cite the applicable standard of review as either Rule 12(b)(3) or Rule 12(b)(6).

[6] *See, e.g., Am. Patriot*, 364 F.3d at 887 (the defense of improper venue is "strictly for the convenience of the defendant; he doesn't have to engage in discovery to know whether the forum chosen by the plaintiff is a convenient one; and so there is no reason to allow him to lie back, wait until the plaintiff has invested resources in preparing for suit in the plaintiff's chosen forum, wait perhaps to assess his prospects in that forum, and only then demand that the case start over elsewhere"); *Frietsch*, 56 F.3d at 830 ("judicial economy requires selection of the proper forum at the earliest possible opportunity").

decision." *Deb v. SIRVA, Inc*., 832 F.3d 800, 809 (7th Cir. 2016) (citing *Estate of Myhra v. Royal Caribbean Cruises, Ltd*., 695 F.3d 1233, 1239 (11th Cir. 2012)).

In *Atlantic Marine,* however, the Supreme Court held that a motion to dismiss under Rule 12(b)(3) is not the correct procedure for a civil litigant to use in seeking to enforce a forum-selection clause. 571 U.S. at 52. As the Court explained, Rule 12(b)(3) refers to dismissal for "*improper* venue" and whether venue is proper in federal court is to be determined solely by reference to the federal venue statute, 28 U.S.C. § 1391. *Atl. Marine*, 571 U.S. at 55. "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). … Whether the parties entered into a contract containing a forum-selection clause has no bearing" on that issue. *Id.* at 56.

There appears to be no dispute that venue is proper in this Court pursuant to subsection (b)(2) of the federal venue statute, which states that venue in a civil action is proper in, among other places, "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Accordingly, pursuant to *Atlantic Marine*, Rule 12(b)(3)—which applies only to a motions alleging *improper* venue—does not govern E&E's motion to enforce the forum-selection clause in the Work Requisition. *See, e.g., Mueller v. Apple Leisure Corp*., 880 F.3d 890, 894 (7th Cir. 2018) (explaining that "a forum selection clause does not render venue in a court 'wrong' or 'improper' within the meaning of § 1406(a)[7] or Rule 12(b)(3)" (quoting *Atl. Marine*,

---

[7] Section 1406(a) provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Because no other federal district court is an option under the forum-selection clause in this case, the issue is whether Rule 12(b)(3) applies rather than § 1406(a).

571 U.S. at 59)); *see also Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.,* 7 F.4th 555, 560 & n.5 (7th Cir. 2021) (holding that Rule 12(b)(3) does not apply to a motion to dismiss based on a contractual arbitration clause, citing *Atlantic Marine*).

## 2.   RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal based on a complaint's failure "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). E&E argues that dismissal is warranted because the forum-selection clause in the Work Requisition requires CSG to file suit "in the trial courts of Lake County, Indiana," not because CSG's Complaint fails to state a claim upon which relief can be granted. On its face, therefore, it would seem that Rule 12(b)(6) is not the appropriate procedural rule to invoke in seeking dismissal of claims based on a contractual forum-selection clause. *See, e.g., Lawson Steel, Inc. v. All State Diversified Prods., Inc.,* No. 1:10-cv-1750, 2010 WL 5147905, at *5 (N.D. Ohio Nov. 23, 2010) (holding that Rule 12(b)(6) "is not an appropriate mechanism for challenging venue" because, among other things, "the underlying purpose of Rule 12(b)(6), on its face," is to require that a plaintiff plead sufficient facts to support a claim for relief, whereas "[t]he underlying purpose of challenging venue … is entirely different"); *Gouge v. Microbac Laboratories, Inc.,* No. 3:11-CV-143, 2011 WL 3876919, at *3–4 (E.D. Tenn. Sept. 1, 2011) (agreeing with *Lawson* that "the standard  of review the U.S. Supreme Court has set forth for resolving motions to dismiss based on forum selection clauses does not require the court to accept the pleadings as true," and declining "to enforce the forum selection clause … by way of a Rule 12(b)(6) motion").

Nevertheless, in *Atlantic Marine*, the Supreme Court left open the issue of whether Rule 12(b)(6) could be used to enforce a forum-selection clause. *See Atl. Marine*, 571 U.S. at 61. The Court stated, however, that "[e]ven if a defendant could use Rule 12(b)(6) to enforce a forum-

selection clause, that would not change [the Court's] conclusions that § 1406(a)[8] and Rule 12(b)(3) are not proper mechanisms to enforce a forum-selection clause and that § 1404(a)[9] and the *forum non conveniens* doctrine provide appropriate enforcement mechanisms." *Id.* As previously discussed, pre-*Atlantic Marine* Seventh Circuit case law explicitly held that a Rule 12(b)(6) motion was *not* the proper procedural mechanism for enforcing a forum-selection clause. *See, e.g., Frietsch,* 56 F.3d at 830 (rejecting as "not persuasive" the "minority view" that "a motion to dismiss on the basis of a forum selection clause should be deemed to be brought under [Rule 12(b)(6)]"). But the *Frietsch* court's comments regarding Rule 12(b)(6) had to do with a timing issue not relevant to the Supreme Court's analysis of the issue in *Atlantic Marine*.[10] Moreover, *Frietsch*, as well as like circuit case law rejecting Rule 12(b)(6) in favor of Rule 12(b)(3), have been overruled by *Atlantic Marine* insofar as the applicability of Rule 12(b)(3) is concerned. Finally, the Court is not aware of any post-*Atlantic Marine* Seventh Circuit case law that expressly

---

[8] *See supra* note 7.

[9] Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because there is no dispute that the forum-selection clause in this case requires suit in state court, the remedy here if the motion to enforce is granted would be dismissal rather a § 1404(a) transfer to another federal district.

[10] *See supra* note 6.

revisits the Rule 12(b)(6) question in light of that Supreme Court decision.[11] And courts that have

addressed the question outside this circuit have split on the issue.[12]

---

[11] E&E cites two post–*Atlantic Marine* district court cases in this circuit that supposedly "recognized [a forum–selection clause] objection[] under Rule 12(b)(6)." [DE 23 at 2]. But in neither case was there any discussion of whether Rule 12(b)(6) was the correct procedural rule for the defendant's venue objection. *See Turney v. Miller*, No. 18-cv-5186, 2019 WL 3801866, at *2 (N.D. Ill. Aug. 13, 2019) ("Courts use the doctrine of *forum non conveniens* when enforcing a forum-selection clause."); *Cnty. Materials Corp.*, 2017 WL 347474 at *1 n.1 ("Although Defendants cite to Federal Rule Civil Procedure 12(b)(6) in their motion, they move to dismiss solely for improper forum and have not articulated Rule 12(b)(6)'s application to this case.").

[12] *Compare City of Benkelman, Neb. v. Baseline Eng'g Corp.*, 867 F.3d 875, 881 & n.6 (8th Cir. 2017) (noting that under *Atlantic Marine*, a motion to transfer under the doctrine of *forum non conveniens*, not to dismiss under Rule 12(b)(6), is the appropriate method to enforce a forum-selection clause); *Cedar Poly, LLC v. ADG Sols., Inc.*, No. 20-CV-13-CJW-KEM, 2020 WL 8225619, at *3 (N.D. Iowa May 20, 2020) (holding that the defendant had "not met its burden to establish that dismissal under Rule 12(b)(6) is an appropriate way to enforce the forum-selection clause"); *D'Arbonne Bend LLC v. Pierce Partners III, LLC*, No. LA CV19-4040 JAK (SKx), 2020 WL 10786670, at *4 (C.D. Cal. Feb. 19, 2020) ("Based on *Atlantic Marine*, … and other Ninth Circuit precedent, a motion to dismiss under Rule 12(b)(6) to enforce a forum selection clause is not the appropriate means to present the issue."); *Nielsen v. Thermo Mfg. Sys., LLC*, 8:17CV471, 2018 WL 1383182, at *5 (D. Neb. Mar. 19, 2018) ("[B]ecause [defendants] have not otherwise demonstrated the propriety of a Rule 12(b)(6) dismissal in this context, the Court finds they are not entitled to enforce the forum-selection clause through Rule 12(b)(6)."); *Kurra v. Synergy Computer Sols., Inc.*, No. 15-cv-13952-ADB, 2016 WL 5109132, at *6 n.6 (D. Mass. Sept. 19, 2016) (declining to find the defendant's motion as arising under Rule 12(b)(6), and instead applying the approach outlined in *Atlantic Marine*); *Hudson Fin. Corp. v. Autoliv ASP, Inc.*, No. 1:12-cv-2808, 2014 WL 132437, at *2 n.1 (N.D. Ohio Jan. 14, 2014) (while noting that the Supreme Court in *Atlantic Marine* did not decide the issue and that lower courts are split, court finds "no reason to depart" from its prior determination in *Lawson Steel, Inc.*, 2010 WL 5147905, that Rule 12(b)(6) is not an appropriate mechanism for dismissal based on a forum-selection clause), *with Amwear USA, Inc. v. Galls, LLC*, No. 5:20-CV-354-REW, 2021 WL 1994228, at *4 (E.D. Ky. May 18, 2021) ("the Sixth Circuit and district court cases in the Circuit continue to recognize 12(b)(6) as a proper mechanism to enforce a valid forum-selection clause, even after *Atlantic Marine*"); *Mix v. Neeb*, No. 2:14-cv-1594-KJM-AC, 2014 WL 6469130, at *2 (E.D. Cal. Nov. 17, 2014) (noting that *Atlantic Marine* forecloses the avenue of relying on Rule 12(b)(3), and thus "accept[ing] [the defendant's] characterization of its motion as brought under Rule 12(b)(6)"); *Carter's of New Bedford, Inc. v. Nike, Inc.*, No. Civil Action No. 13–11513–DPW, 2014 WL 1311750, at *2 n.5 (D. Mass. Mar. 31, 2014) (treating the defendant's motion to dismiss based on a forum-selection clause "as they have presented it" under Rule 12(b)(6), after citing pre-*Atlantic Marine* First Circuit precedent allowing dismissal under Rule 12(b)(6) as well as the court's conclusion that "revising the technical form of the motion would not meaningfully alter the

In the end, E&E fails to cite any case law for the proposition that a plaintiff bringing a claim outside the contractually selected forum constitutes a "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), E&E "must affirmatively show [CSG] can prove no facts entitling [CSG] to relief. By failing to cite any case law to support the proposition that [CSG] filing suit outside [the contractually selected forum] results in a failure to state a claim, [E&E] has failed to carry its burden." *Cedar Poly, LLC,* 2020 WL 8225619, at *3.

### 3.      STAND-ALONE MOTION TO DISMISS FOR *FORUM NON CONVENIENS*

A third option for the Court is to apply neither Rule 12(b)(3) nor Rule 12(b)(6), but rather the standard and procedural rules for dismissal under the common law doctrine of *forum non conveniens*, as set forth in *Atlantic Marine* and other applicable case law. In *Atlantic Marine*, the Supreme Court held that when a forum-selection clause requires suit in a specific federal forum, the clause may be enforced through a motion to transfer based on the convenience of the parties, 28 U.S.C. § 1404(a), rather than a motion to transfer or dismiss for improper venue, 28 U.S.C. § 1406(a). *Atlantic Marine*, 571 U.S. at 59. However, "§ 1404(a) is not a suitable mechanism to enforce forum-selection clauses" that specify a state or foreign tribunal. *Id.* at 60. "Instead, the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id.* As the Supreme Court explained, § 1404(a) "is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system; in such cases, Congress has replaced the

---

analysis"), *aff'd* 790 F.3d 289 (1st Cir. 2015); *see also Transp. Sys., LLC v. Amazon,* No. 18-CV-11286, 2018 WL 5043726, at *2 (E.D. Mich. Oct. 17, 2018) ("Given the uncertainty in the law as to whether dismissal under Rule 12(b)(6) is the proper mechanism to enforce a forum-selection clause calling for bringing suit in a state forum, or whether the court should analyze such a claim under the doctrine of *forum non conveniens*, the court shall undertake both analyses here.").

traditional remedy of outright dismissal with transfer." *Id.* (citations omitted). "For the remaining set of cases calling for a nonfederal forum, § 1404(a) has no application, but the residual doctrine of *forum non conveniens* 'has continuing application in federal courts.'" *Id.* at 60-61 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430 (2007)).

The *forum non conveniens* doctrine "allows a federal district court to dismiss a suit over which it would normally have jurisdiction in order to best serve the convenience of the parties and the ends of justice." *Stroitelstvo Bulgaria Ltd. v. Bulgarian-Am. Enter. Fund*, 589 F.3d 417, 421 (7th Cir. 2009). Outside of the context of a contractual forum-selection clause, a district court "may dismiss a case on forum non conveniens grounds when it determines that there are 'strong reasons for believing it should be litigated in the courts of another, normally a foreign, jurisdiction.'" *Deb,* 832 F.3d at 805 (quoting *Fischer v. Magyar Allamvasutak Zrt.,* 777 F.3d 847, 866 (7th Cir. 2015)). Where a forum-selection clause is involved, the *forum non conveniens* analysis entails a balancing-of-interests under the terms set out in 28 U.S.C. § 1404(a), wherein the district court "must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62. "Factors relating to the parties' private interests [i.e., convenience] include 'relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.'" *Id.* at 62 n.6 (citation omitted). "Public-interest factors may include 'the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law.'" *Id.* at 62 n.6 (citation omitted); *see also Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) ("The 'interest of justice' is a

14

separate element of the [*forum non conveniens*] analysis that relates to the efficient administration of the court system," including "docket congestion and likely speed to trial …; each court's relative familiarity with the relevant law; the respective desirability of resolving controversies in each locale; and the relationship of each community to the controversy." (internal citations omitted)).

The same balancing-of-interests test applies in the presence of a contractually valid forum-selection clause except that the presence of such a clause requires district courts to adjust their usual *forum non conveniens* analysis. Where a valid and enforceable forum-selection clause exists, a court "should not consider arguments about the parties' private interests" and "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atl. Marine*, 571 U.S. at 64 ("When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation."). "As a consequence, a district court may consider arguments about public-interest factors only." *Id.* "The interest of justice may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result." *Rsch. Automation, Inc.*, 626 F.3d at 978. However, in the context of a forum-selection clause, the Supreme Court has said that public interest factors "will rarely defeat a transfer motion." *Atl. Marine*, 571 U.S. at 64. Accordingly, "the practical result is that forum-selection clauses should control except in unusual cases. Although it is conceivable in a particular case that the district court would refuse to transfer a case notwithstanding the counterweight of a forum-selection clause, such cases will not be common." *Id.* (internal quotation marks and citation omitted).

Although the Supreme Court in *Atlantic Marine* did not expressly refer to a "stand-alone" motion based on the *forum non conveniens* legal framework set out in that decision, it clearly

envisioned one. *See id.* at 61 n.4 (noting that a Rule 12(b)(6) motion to enforce a forum–selection clause could be problematic and "therefore, defendants would have sensible reasons to invoke § 1404(a) or the *forum non conveniens* doctrine *in addition to* Rule 12(b)(6)" (emphasis added)). Thus, the Court will follow that approach here and address E&E's motion as a stand-alone motion to enforce the forum-selection clause in the Work Requisition. *See, e.g., Michael Lewis Co.*, 2022 WL 846841, at *1, 2-3 (where the defendant moved to dismiss based on *forum non conveniens,* or, "[i]n the alternative, … for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)," court dismisses case based on *forum non conveniens*, discussing only the legal standard applicable under *Atlantic Marine* without mentioning the Rule 12(b)(6) legal standard); *see also Jones v. Ponant USA LLC*, No. 19 Civ. 3041 (NRB), 2020 WL 3172778, at *1 (S.D.N.Y. June 15, 2020) ("District courts often *sua sponte* adjudicate motions to dismiss under Rule 12(b)(3) based on foreign forum-selection clauses as motions to dismiss for *forum non conveniens* given the high frequency with which litigants, such as the parties here, overlook *Atlantic Marine* and misidentify Rule 12(b)(3) as the proper procedural mechanism for enforcing such clauses." (citing and adopting the Seventh Circuit's decision in *Mueller*, 880 F.3d at 894)); *O'Bryant v. Adams*, 123 N.E.3d 689, 695-96 (Ind. 2019) (recognizing a stand-alone motion as a proper procedural vehicle for enforcing a forum-selection clause).

## B.   WHETHER CSG AND E&E ENTERED INTO A VALID AND BINDING CONTRACT

Before proceeding to analyze CSG's argument for not enforcing the forum–selection clause in the Work Requisition, the Court must explore further the implications of E&E's argument for applying Rule 12(b)(6) to its motion. Those implications have to do with the question of whether the Work Requisition is an enforceable agreement. E&E touches upon that issue but only for purposes of reserving its right to "dispute[ ] whether the Work Requisition is a valid and

enforceable contract." [DE 18 at 4 n.2]. E&E briefly explains the argument it intends to make in response to the merits of CSG's claim to recover against E&E for amounts allegedly owed under the Work Requisition:

> "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Jernas v. Gumz*, 53 N.E.3d 434, 445 (Ind. Ct. App. 2016). "When one enters into an agreement with the understanding that neither party is bound until a subsequent formal written document is executed, no enforceable contract exists until the subsequent document is executed." *Wolvos v. Meyer*, 668 N.E.2d 671, 675 (Ind. 1996). E&E contends that the Work Requisition was not an enforceable contract unless and until E&E issued a purchase order.

[*Id.*].

Thus, E&E argues that the Work Requisition is not a valid, enforceable contract, and, at the same time, that the Court should enforce the forum-selection clause in that supposedly invalid, unenforceable agreement. E&E attempts to thread the needle between those two inconsistent positions by citing the Rule 12(b)(6) standard that a court should assume the truth of the plaintiff's allegations for purposes of a motion to dismiss. *See* [*id.*]. But E&E's motion seeks substantive relief under the contract, i.e., enforcement of the forum-selection clause. And while a party may *plead* in the alternative, *see* Fed. R. Civ. P. 8(d), a party is estopped from "unfairly receiving the benefit of a contract while at the same time repudiating what it believes to be a disadvantage in the contract." *Gersten v. Intrinsic Techs., LLP*, 442 F. Supp. 2d 573, 579 (N.D. Ill. 2006); *see Hughes Masonry Co. v. Greater Clark Cnty. Sch. Bldg. Corp.*, 659 F.2d 836, 839 (7th Cir. 1981) (a party "cannot have it both ways. (It) cannot rely on the contract when it works to its advantage, and repudiate it when it works to (its) disadvantage." (quoting *Tepper Realty Co. v. Mosaic Tile Co.*,

259 F. Supp. 688, 692 (S.D.N.Y. 1966))); *see also S. Ill. Beverage, Inc. v. Hansen Beverage Co.,*

No. 07-CV-391-DRH, 2007 WL 3046273, at *11-13 (S.D. Ill. Oct. 15, 2007).[13]

The Seventh Circuit's opinion in *Deb v. SIRVA, Inc.*, 832 F.3d 800, is instructive to E&E's

argument that it can assume that the Work Requisition is an enforceable contract for purposes of

---

[13] E&E cites the same principle only against CSG, i.e., for "fil[ing] [a] claim[] for breach of contract enforcing only the portions of the contract which [it] like[s], while ignoring portions [it] dislike[s]." [DE 23 at 5]. But CSG was free to waive the forum-selection clause, which would appear to have been placed by CSG in the Work Requisition for its own benefit (CSG, not E&E, is a citizen of Indiana, the venue specified for disputes by the forum-selection clause). *See* 13 WILLISTON ON CONTRACTS § 39:24 (4th ed.) ("[I]t is well settled that a contracting party may unilaterally waive a provision of the contract ... which has been placed in the contract for that party's benefit."); *cf. Open Text Corp. v. Grimes*, 262 F. Supp. 3d 278, 286 (D. Md. 2017) (finding that the specific language of the forum-selection clause unambiguously indicated that the plaintiff was the sole intended beneficiary of that clause, and thus the plaintiff could waive its benefit and choose to file suit in a forum other than the one selected in the contract). Thus, by filing suit in this federal district, CSG has waived enforcement of the forum-selection clause insofar as a state court venue is required. While E&E is not required to also waive the forum-selection clause, neither may it violate the same principle it accuses CSG of violating by arguing that the forum-selection clause should be enforced while simultaneously arguing that the agreement is invalid. CSG does not violate that principle because it is not arguing that the reason the forum-selection clause is unenforceable is that the *Work Requisition* is unenforceable or invalid. *Compare 1st Signature Lending LLC v. Brighton Bank,* No. 1:20-CV-2130-JMS-MPB, 2020 WL 7319058, at *6 (S.D. Ind. Dec. 11, 2020) (rejecting the plaintiff's argument that the forum-selection clause was unenforceable because the agreement containing the clause was no longer in effect, while at the same time alleging in the complaint that the defendant violated that agreement). The *1st Signature* court observed that "courts have concluded that forum-selection clauses may still be enforced even where disputes remain as to the validity of the agreements containing those clauses." *Id.* (citing, *inter alia, Muzumdar v. Wellness Int'l Network, Ltd*., 438 F.3d 759, 762 (7th Cir. 2006); and *Williams v. MJC Acquisition, LLC*, Cause No. 1:20-cv-68-DRL-SLC, 2020 WL 3411178, at *3 (N.D. Ind. June 22, 2020)). In context, however, the court was referring to the situation where the *plaintiff* disputed the validity of the underlying agreement. Neither *1st Signature* nor any of the cases that court cited for this point involved the situation here of a defendant arguing the forum-selection clause is enforceable while simultaneously taking the position that the contract itself is not. To be sure, CSG argues that the forum-selection clause itself is invalid, as discussed in the next section. But that is an argument for avoiding the forum-selection clause which the law permits CSG to make. *See Muzumdar*, 438 F.3d at 762 ("What is true is that a forum selection clause can be found invalid because the clause itself was procured by fraud[,] … [but] [the plaintiffs] make no attempt to show that the forum selection clause was itself obtained by fraud.").

18

its motion to enforce the forum-selection clause without conceding the issue for the case as whole. The plaintiff in *Deb* was a citizen of Canada, who brought an action in Indiana state court against two Delaware corporations with corporate offices in Indiana. The plaintiff sought to hold the corporations responsible as joint venturers for damages the plaintiff sustained from an Indian moving company's improper disposal and loss of the plaintiff's personal property in connection with his move from India to Canada. *Id.* at 804-05. The defendants argued that India was the more appropriate forum to entertain the plaintiff's claims, and moved for dismissal of the complaint based on the doctrine of *forum non conveniens* (albeit not based on a forum-selection clause). *Id.* at 805. The *forum non conveniens* issue for the court was whether India was an alternative and adequate forum available to the parties, a prerequisite to dismissing a case based on that doctrine.

To show that India was an available forum, the defendants argued that the plaintiff could have sued them in India, and to demonstrate that was the case they pointed to the plaintiff's allegation in the complaint that they were in a joint venture with the Indian moving company—an allegation the defendants said they were "assuming, *arguendo*," to be true for purposes of their *forum non conveniens* motion to dismiss. *Id.* at 807. The Seventh Circuit responded that it was "worth stopping for a moment to unpack the defendants' argument further." *Id.* "[T]he only way that [the plaintiff] can sue [the defendants] in India is if [the defendants] had something to do with the wrongdoing that occurred in India," such as "some legally sufficient affiliation with [the Indian moving company] that would allow the Indian courts to exert jurisdiction over them." *Id.* at 808. "Oddly," the court observed, "in order to support dismissal for forum non conveniens then, the defendants end up trying to thread a small-eyed needle by claiming, on the one hand, that they could be subject to jurisdiction in India, while simultaneously refusing to acknowledge an actual legal affiliation with [the Indian moving company]." *Id.* The court rejected this approach to the

19

defendants' motion to dismiss based on *forum non conveniens*, reminding the defendants that, "although the case comes before [the court] on a motion to dismiss in which a court cannot determine the truth of factual assertions," it was "the *defendant's* burden to demonstrate that forum non conveniens is appropriate." *Id.* (emphasis added). Yet, the court pointed out, "the only evidence to support" the defendants' contention that the Indian court could exert jurisdiction over them came "from the bald assertions in the *plaintiff's* complaint that [the defendants] were doing business in India as a joint venture with [the Indian moving company]," and those allegations had not yet been tested or proven, nor had disputes regarding them been resolved. *Id.* (emphasis in original).

Similarly, here, for purposes of its motion to dismiss, it is E&E's burden to establish the existence of an enforceable forum-selection clause. *See Atl. Marine*, 571 U.S. at 581 n.5 (stating that the Court's discussion of the doctrine of *forum non conveniens* "presupposes a contractually valid forum-selection clause"); *Cinram, Inc. v. Worldwide Ent. Grp., LLC,* No. IP99-1296-C-T/G, 2000 WL 1124591, at *2 (S.D. Ind. Aug. 7, 2000) ("In order to properly evaluate [a motion to enforce a forum-selection clause], it must first be determined whether the … [a]greement is a valid and binding contract."); *see also Waste Mgmt. of La., L.L.C. v. Jefferson Par.,* 48 F. Supp. 3d 894, 900 (E.D. La. 2014) (referring to a Rule 12(b)(6) motion brought to enforce a forum-selection clause as seeking dismissal based on an affirmative defense).[14] Therefore, even under Rule 12(b)(6), the Court doubts E&E could obtain dismissal based on a forum-selection clause by

---

[14] Once the existence of an enforceable forum-selection clause is shown to exist, the burden shifts to CSG to demonstrate that the clause itself is invalid or unenforceable. *See Atl. Marine*, 571 U.S. at 67 ("the party acting in violation of the forum-selection clause … must bear the burden of showing that public-interest factors overwhelmingly disfavor a transfer").

assuming that an enforceable contract with a forum-selection clause exists. *See, e.g., Atl. Marine*, 571 U.S. at 61 n.4 ("a motion under Rule 12(b)(6) … may lead to a jury trial on venue if issues of material fact relating to the validity of the forum-selection clause arise"). In short, if E&E contends that the Work Requisition is not a valid and enforceable contract, then it cannot avoid resolution of that issue by citing the standard of review for a Rule 12(b)(6) motion. *See Deb*, 832 F.3d at 808-809 (declining to apply the Rule 12(b)(6) principle of accepting the complaint's allegations as true where there was an unresolved factual issue necessary to resolution of the defendants' *forum non conveniens* motion).[15]

As the Supreme Court recognized in *Atlantic Marine*, disputed factual issues related to the forum-selection clause may arise if a defendant moves to dismiss under Rule 12(b)(6), which issues would have to await resolution at trial. *Atl. Marine*, 571 U.S. at 61 n.4. The Supreme Court indicated that delay in resolving the venue question were the defendant to file a Rule 12(b)(6) motion could "be avoided" by filing a stand-alone motion pursuant to either § 1404(a) or the *forum non conveniens* doctrine. *Id.* The case law ""recogni[zes] that an evidentiary analysis is important in assessing the enforceability of a forum selection clause." *D'Arbonne Bend LLC*, 2020 WL 10786670, at *4. "Under the Supreme Court's standard for resolving motions to dismiss based on

---

[15] *See also Amwear USA, Inc.*, 2021 WL 1994228, at *4 (noting "the conceptual tension" "inherent when examining venue and forum-selection clauses through a 12(b)(6) lens"); *Kurra*, 2016 WL 5109132, at *6 n.6 (explaining that there is "an important procedural difference between a motion to dismiss under Rule 12(b)(6) and the approach outlined in *Atlantic Marine*," and that, under *Atlantic Marine*, the court is not required to accept plaintiff's allegations as true, may receive evidence outside the pleadings, can make credibility determinations, and can issue findings of fact relevant to the enforceability of a forum-selection clause); *Lawson Steel, Inc.,* 2010 WL 5147905, at *5 (pre-*Atlantic Marine* case concluding that Rule 12(b)(6) "is not an appropriate mechanism for a venue challenge" because of its underlying purpose, the procedural consequences of granting such a request, possible gamesmanship, and the fact that other legal mechanisms exist specifically to challenge venue).

forum–selection clauses, the pleadings are not accepted as true, as would be required under Rule12(b)(6)." *Lawson Steel, Inc.*, 2010 WL 5147905, at *5 (footnote omitted; citing cases). Thus, even though Rule 12(b)(3) does not apply directly for the unrelated reason articulated by the Supreme Court in *Atlantic Marine*, the evidentiary framework typically applied to a Rule12(b)(3) motion "is consistent with the Supreme Court standard for resolving forum selection clause cases." *D'Arbonne Bend LLC*, 2020 WL 10786670, at *4.

This is also the approach outlined in Seventh Circuit case law. *See Michael Lewis Co*., 2022 WL 846841, at *3 ("the court 'assumes the truth of the allegations in the plaintiff's complaint, *unless contradicted by the defendant's affidavits*,' and 'need not view the allegations of the complaint as the exclusive basis' for the decision" (emphasis added) (quoting *Deb*, 832 F.3d at 80)). "[O]ther circuits to have considered the question agree that it is appropriate for a district court to look outside the complaint, or particularly at a defendant's contradictory statements, when considering a motion to dismiss [based on *forum non conveniens*]." *Deb*, 832 F.3d at 809.[16] "Ordinarily these cases speak of the ability of a court to view evidence of the party moving to

---

[16] For example,

> at least until facts are resolved, in many cases the non-moving party will survive [a motion to dismiss based on a forum-selection clause]. … To resolve such motions when genuine factual issues are raised, it may be appropriate for the district court to hold a Rule 12(b)(3) motion in abeyance until the district court holds an evidentiary hearing on the disputed facts. …Alternatively, the district court may deny the Rule 12(b)(3) motion while granting leave to refile it if further development of the record eliminates any genuine factual issue.

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1139 (9th Cir. 2004); *see also Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012); *New Moon Shipping Co. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997).

dismiss (the defendant) in order to rebut the allegations of the non-movant's (the plaintiff's) complaint asserting facts supporting its chosen venue." *Id.* This case like *Deb,* however, "is unique in that, in an unusual course of events, the *defendant*[ ] cite[s] to the *plaintiff's* bare allegation[s] … in the complaint in order to support [its] contention that the case should be dismissed …. But the general premise is the same. Where one party makes a bald claim of venue and the other party contradicts it, a district court may look beyond the pleadings to determine whether the chosen venue is appropriate." *Id.* at 809–10 (emphasis in original). CSG's allegation in this case that the Work Requisition is an enforceable contract, like the allegation of a joint venture in *Deb*, has "never been questioned, tested or explored"; "no court has ever made a determination about" whether the Work Requisition is an enforceable contract; and E&E has "never admitted" that it is. *Id.* at 808. Accordingly, there is a disputed issue of fact concerning whether the parties formed an enforceable contract reflected by the Work Requisition, and E&E's motion dismiss must be denied without prejudice on that basis.

### C. WHETHER THE FORUM-SELECTION CLAUSE IS INVALID ON PUBLIC POLICY GROUNDS

As previously discussed, *Atlantic Marine* instructs that courts conducting a *forum non conveniens* analysis in conjunction with a forum-selection clause are to consider public-interest factors only, which will rarely defeat a motion to enforce a forum-selection clause. *Atl. Marine,* 571 U.S. at 64. Accordingly, assuming that the Work Requisition is a valid and enforceable contract, CSG faces an uphill battle in arguing that public interest factors defeat its enforcement. But that is not exactly CSG's argument. CSG argues that the forum-selection clause in the Work Requisition is invalid on public policy grounds related to judicial efficiency concerns. The validity issue raised by CSG technically precedes the question of whether the public interest factors

discussed in *Atlantic Marine* should override an otherwise valid and enforceable forum-selection clause in an otherwise valid and enforceable agreement. *See, e.g., Watch & Accessory Co. v. Garmin Int'l, Inc.,* Case No. 21-C-382, 2021 WL 6197892, at *3 (E.D. Wis. Dec. 30, 2021) (acknowledging that "[t]he first step in deciding whether to enforce a forum selection clause is to determine whether the clause is 'contractually valid'" (quoting *Atlantic Marine,* 571 U.S. at 62 n.5)); *Gonzalez v. Landes Foods, LLC,* No. 1:18-cv-196-JMS-DML, 2018 WL 1312207, at *2 (S.D. Ind. Mar. 14, 2018) ("[T]he Seventh Circuit requires courts to assess the validity of a forum selection clause … and then determine whether it should be enforced pursuant to the federal common law doctrine of *forum non conveniens*."); *Harding Materials, Inc. v. Reliable Asphalt Prods., Inc.,* No. 1:16-cv-2681-JMS-MJD, 2017 WL 495787, at *4 (S.D. Ind. Feb. 6, 2017) ("Having found that the forum-selection clause is unenforceable … there is no valid forum-selection clause for purposes of the *forum non conveniens* analysis."), *report and recommendation adopted,* No. 1:16-cv-2681-JMS-MJD, 2017 WL 735683 (S.D. Ind. Feb. 24, 2017).[17]

---

[17] The Court recognizes that there is a fine line between arguing that a forum-selection clause is invalid on public policy grounds and that it is unenforceable pursuant to the public interest factors outlined in *Atlantic Marine. See Ha Thi Le v. Lease Fin. Grp., LLC,* Civil Action No. 16-14867, 2017 WL 2915488, at *3 n.6 (E.D. La. May 9, 2017) ("Because the Court concludes that the forum selection clause in the equipment contract is unenforceable under federal law and Louisiana law, it need not delve into the tricky question of whether federal law or state law controls the 'validity' of a forum selection clause—if indeed 'enforceability' and 'validity' remain distinct concepts after the Supreme Court's decision in *Atlantic Marine*." (citing *Barnett v. DynCorp Int'l, L.L.C.*, 831 F.3d 296, 302 (5th Cir. 2016) ("[W]e do not appear to have drawn [a] distinction between validity and enforceability, instead seeming to treat those words as synonyms in the forum-selection clause context."))); *see also Watch & Accessory Co.,* 2021 WL 6197892, at *3 (stating that the plaintiff's argument that the forum-selection clause was "invalid because it violates the public policy of Wisconsin" was "not a matter of contract invalidity," and proceeding to assess the public policy argument under the public interest factors discussed in *Atlantic Marine's forum non conveniens* analysis instead (citing *ACD Distrib., LLC v. Wizards of the Coast, LLC,* No. 18-CV-658-JDP, 2018 WL 4941787, at *1 (W.D. Wis. Oct. 12, 2018))). In the end, however, the Court finds the result would be the same if, instead of addressing CSG's public policy argument as a validity issue (to which, as discussed above, state law applies), it were to address it as a public interest factor on

If the Court were to accept CSG's public policy argument, then E&E's motion could be denied with prejudice on that basis, which would eliminate the need to decide whether the Work Requisition is an enforceable contract (as discussed in the previous section). Accordingly, even though the Court has already decided that E&E's motion must be denied without prejudice because of the unresolved disputed issue of fact regarding whether the Work Requisition is an enforceable contract, the Court will go on to also consider CSG's public policy argument against enforcing the forum-selection clause in that agreement.

CSG's public policy argument is based on *Farm Bureau General Insurance Co. of Michigan v. Sloman*, 871 N.E.2d 324 (Ind. Ct. App. 2007). As an initial matter, E&E argues that federal not state law decides the validity issue.[18] E&E cites several district court decisions in arguing that only federal law is relevant, but the choice of law issue was not before the court in any of those cases. E&E also cites *Northwestern National Insurance Co. v. Donovan,* 916 F.2d 372 (7th Cir. 1990), but in that case the parties did not dispute that federal law controlled, so the Seventh Circuit did not resolve the question. *Id.* at 374. To the extent that the *Donovan* court

---

the enforcement issue under the federal *forum non conveniens* framework. *See Barnett*, 831 F.3d at 304 (holding that validity and enforceability issues were indistinguishable, but that, under federal law, a forum-selection clause may be held invalid if its enforcement "would contravene a strong public policy of the forum state"); *see also infra* note 20 (discussing recent district court case that treats public policy argument based on judicial efficiency concerns as a "public interest" factor under *Atlantic Marine* balancing test).

[18] E&E does not dispute that if state law applies the issue would be governed by Indiana law given that the Work Requisition expressly provides that it "shall be interpreted under the laws of the State of Indiana" [DE 1 at 13]. *See E. Coast Ent. of Durham, LLC v. Houston Cas. Co.,* 31 F.4th 547, 550 (7th Cir. 2022) ("[a] federal court sitting in diversity applies the choice-of-law rules of the forum state"); *St. Paul Travelers Cos., Inc. v. Corn Island Shipyard, Inc.,* 437 F. Supp. 2d 837, 842 (S.D. Ind. 2006) ("Indiana law clearly favors contractual choice-of-law … provisions and presume[s] that contracts represent the freely bargained agreement of the parties." (internal quotation marks and citation omitted)), *aff'd*, 495 F.3d 376 (7th Cir. 2007).

suggested that the parties were "correct to concede that the issue of validity is one of federal law," *id.*, it subsequently changed its position on that question. *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) (noting that "the majority of federal circuits hold that the enforceability of a forum selection clause implicates federal procedure and should therefore be governed by federal law" (internal quotation marks and citation omitted), but that the Seventh Circuit has "taken a different approach" (citing *Abbott Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 423 (7th Cir. 2007) ("Simplicity argues for determining the validity and meaning of a forum selection clause, in a case in which interests other than those of the parties will not be significantly affected by the choice of which law is to control, by reference to the law of the jurisdiction whose law governs the rest of the contract in which the clause appears, rather than making the court apply two different bodies of law in the same case."))).[19]

In any event, the Indiana Court of Appeals held in *Farm Bureau* that "Indiana has adopted the Supreme Court's reasoning from *Carnival* [*Cruise Lines v. Shute*, 499 U.S. 585 (1991)] as it relates to the validity of forum selections clauses." *Farm Bureau,* 871 N.E.2d at 329. Thus, the choice between federal or state law is not outcome determinative here. *See, e.g., Kurra*, 2016 WL 5109132, at *6 (declining to decide the choice of law question after determining that the same result would be reached "under the functionally similar legal standards established by federal and Michigan"). Under *Carnival* and *Farm Bureau,* forum-selection clauses "are enforceable if they are reasonable and just under the circumstances and there is no evidence of fraud or overreaching

---

[19] *See also IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union,* 512 F.3d 989, 991 (7th Cir. 2008) ("Abbott Laboratories ... held that the validity of a forum-selection clause depends on the law of the jurisdiction whose rules will govern the rest of the dispute."); *1st Signature Lending LLC,* 2020 WL 7319058, at *5; *Pyrolyx USA Ind., LLC v. Zeppelin Sys. GMBH*, No. 2:20-cv-108-JMS-DLP, 2020 WL 3976975, at *7 (S.D. Ind. July 14, 2020); *Turney,* 2019 WL 3801866, at *2.

such that the agreeing party would be deprived of a day in court. Additionally, the provision must have been freely negotiated." *Id.* The issue in this case, like in *Farm Bureau*, is whether the forum-selection clause is reasonable and just under the circumstances.

In *Farm Bureau*, the court held that the forum-selection clause was unjust and unreasonable primarily because it "'interfere[d] with the orderly allocation of judicial business.'" *Id.* at 330 (quoting *Nw. Nat'l Ins. Co.,* 916 F.2d at 376). Specifically, the court held that the implementation of the forum-selection clause in that case interfered with the orderly allocation of judicial business because its application would result "in two separate yet similar lawsuits." *Id.* at 331; *see also id.* at 333 (citing *Prows v. Pinpoint Retail Sys., Inc.*, 868 P.2d 809, 812 (Utah 1994), in which the court stated that it "was particularly troubled 'by the prospect of requiring [the plaintiff] to litigate the same case in two different forums,'" and that "'[r]equiring a bifurcated trial on the same issues contravenes the objective of modern procedure, which is to litigate all claims in one action if that is possible"); and *Alpha Sys. Integration, Inc. v. Silicon Graphics, Inc.*, 646 N.W.2d 904, 909 (Minn. Ct. App. 2002), where the court stated that "[t]he enforcement of a forum-selection clause creates a serious inconvenience if it would result in two lawsuits involving similar claims or issues being tried in separate courts")).

The Court need not delve into the issue of whether the prospect of multiple litigation over the same or related claims is a sufficient reason in general to declare a forum-selection clause invalid or unenforceable. In *Farm Bureau*, the forum-selection clause in the insurance policy required that suit be brought to recover under the terms of the uninsured motorist provision of the policy in the state where the policy was purchased, which was Michigan. But the underlying accident occurred in Indiana. As the court explained, "[t]o understand the effect of this action on the judicial system, it is preliminarily necessary to understand the case within a case aspect of this

action against [the insurance company]." 871 N.E.2d at 330. That is, a determination of whether the insurance company was obligated to its insured under the uninsured motorist coverage of the policy "necessarily involve[d] … a determination of [the uninsured motorist's] liability to [the insured] and the extent of the [insured's] damages." *Id.* at 331. But the insurance policy, including the forum–selection clause in the policy, could not "bind [the uninsured motorist] who was not a party to" the policy, and "Michigan would have no jurisdiction over [the uninsured] motorist for an accident that occurred in Indiana." *Id.* "Hence implementation of [the insurance company's] forum selection clause would result in [the insured] having to file two separate yet similar lawsuits emanating from the same accident: one in Indiana against [the uninsured motorist] regarding liability and damages, and one in Michigan against [the insurance company] regarding its obligation to pay damages to [the insured] under its uninsured motorist provision." *Id.*

This case is distinguishable because, even though enforcement of the forum-selection clause here might result in two lawsuits involving interconnected claims—the current one, which could proceed with CSG's claims against Advient, and a re-filed suit against E&E in a state court in Lake County, Indiana—that result would be entirely of CSG's own making. That is true because there is nothing of which the Court is aware preventing CSG from suing Advient in state court, and CSG has not argued otherwise. In other words, while there is no contractual forum-selection clause *requiring* CSG to sue Advient in state court, neither is there any contract or statute that would prevent it from doing so. Nor is there any argument made or even hinted at that Advient is subject to personal jurisdiction in federal but not state court in Indiana. CSG asserts that enforcement of the forum–selection clause in the Work Requisition "would negatively impact judicial resources and increase the cost of litigation" because, "regardless of E&E's arguments, Adient will remain a defendant, and this case will proceed." [DE 22 at 5]. But CSG does not argue

that the "will remain" part of that sentence is the result of any prohibition or mandate. To avoid duplication of judicial resources and increased litigation costs, CSG could simply dismiss and re-file this entire lawsuit. *Cf. Steel Dynamics, Inc. v. Big River Zinc Corp.*, No. 1:06-cv-110, 2006 WL 1660599, at *8 (N.D. Ind. June 9, 2006) (citing cases holding that disputes against multiple defendants that are "largely intertwined" must be heard in the forum identified in a mandatory forum-selection clause contained in an agreement with one of the defendants but not the others).[20]

## SUMMARY

CSG maintains that the Work Requisition is an enforceable contract, but that contract contains a forum-selection clause, and the Court disagrees with CSG's contention that the clause is invalid or unenforceable on public policy grounds. However, E&E disputes that the Work Requisition is an enforceable contract, and thus cannot insist on its enforcement until the question of the contract's validity is resolved. Accordingly, E&E's motion to dismiss based on the forum-selection clause must be denied without prejudice. Should E&E wish to concede that the Work

---

[20] An argument nearly identical to CSG's argument here only raised as an *Atlantic Marine* public interest reason for not enforcing the forum-selection clause, was made and rejected by the district court *Nulogy Corp. v. Menasha Packaging Co., LLC*, 590 F. Supp. 3d 1141 (N.D. Ill. 2022). In that case, the plaintiff, citing "the public policy against piecemeal litigation," argued that it should be allowed to continue its litigation against two defendants on related claims notwithstanding a forum-selection clause in a contract between the plaintiff and one of the defendants. *Id.* at 1147. The district court said that it was not clear "how this is a public interest, rather than [the plaintiff's] private interest," but that, in any event, "this does not constitute an 'exceptional public-interest justification' for 'displac[ing] [the] contractual choice of forum.'" *Id.* (quoting *Mueller*, 880 F.3d at 893). In support, the district court cited *Kochert v. Adagen Medical International, Inc.*, 491 F.3d 674 (7th Cir. 2007), where the Seventh Circuit stated that "a plaintiff cannot defeat a forum-selection clause by its choice of provisions to sue on, of legal theories to press, and of defendants to name in the suit." *Id.* at 679. The plaintiff appealed the district court's decision to the Seventh Circuit and oral argument in the appeal was held in January of this year. To the extent that the Seventh Circuit's forthcoming decision in *Nulogy* may implicate the Court's decision in this case, any party may file an appropriate motion promptly after the Seventh Circuit's decision is issued.

Requisition is an enforceable agreement, it may file a renewed motion to enforce the forum-selection clause. E&E may, of course, also pursue its position that the Work Requisition is invalid, and only invoke its right under the forum-selection clause if it were to lose on that issue. But the public policy/public interest analysis may weigh differently if that were to occur, depending on the timing of when the validity issue is resolved. At the current point in these proceedings, the Court perceives little to no prejudice to the public policy or public interest factor of a speedy and efficient resolution of CSG's claims if CSG were required to file a new suit in state court against both defendants. But the Court will not pass judgment at this time as to whether that calculus could change over time. *See, e.g., In re Ryze Claims Sols., LLC,* 968 F.3d 701, 711-12 (7th Cir. 2020) (citing cases in which courts have found "exceptional" circumstances to deny enforcement of a forum-selection clause on public policy grounds, where, for instance, significant proceedings had already occurred, or there was a public interest in judicial economy that heavily favored pursuing the same claims in a single action in a single court).[21]

Accordingly, for the foregoing reasons, E&E Manufacturing's Motion To Dismiss Plaintiff's Complaint **[DE 17]** is **DENIED without prejudice**.

So ORDERED this 29th day of March, 2023.

s/ Joshua P. Kolar
MAGISTRATE JUDGE JOSHUA P. KOLAR
UNITED STATES DISTRICT COURT

---

[21] This resolution of E&E's motion may appear on the surface to give CSG an advantage over E&E in terms of whether the forum-selection clause is enforced. But that is so only because E&E seeks to enforce the forum-selection clause while disputing that the agreement is enforceable, a purely strategic move that appears to be unrelated entirely to any interest or settled contractual expectation E&E might have regarding the forum for disputes under the agreement.